UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MONROE QUAILES, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-2541 (EGS) |
| CARLOS DEL TORO,[1] | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Monroe Quailes, Jr., is a veteran of the United States Army and the United States Navy, who has sought for years to upgrade his 1979 administrative discharge for criminal misconduct to a disability discharge. *See* Mem. Op. at 2-3, ECF No. 16 (recounting prior proceedings). What remains in this action brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706, is the November 13, 2017 decision of the Board for Correction of Naval Records ("BCNR" or "Board"), denying Plaintiff's request to reconsider its earlier decisions based on "new information not previously considered," Compl. Attach., ECF No. 1-1 at 1; *see generally* Mem. Op. (denying Defendant's initial motion to dismiss on procedural grounds).

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 20, and Defendant's Cross-Motion for Summary Judgment, ECF No. 22. For the following reasons, Defendant's motion will be granted, and Plaintiff's motion will be denied.

---

[1] By substitution pursuant to Fed. R. Civ. P. 25(d).

1

## I.  BACKGROUND

On May 14, 1976, Plaintiff enlisted in the Navy and was "assigned to the USS HAWKINS where he suffered from severe bouts of sea sickness, thought disorganization, and paranoid delusions."  *Quailes v. United States*, 25 Cl. Ct. 659, 661, *aff'd*, 979 F.2d 216 (Fed. Cir. 1992).  When Plaintiff returned "to port," he "was absent without leave ("AWOL") on and off for 2 to 4 months."  *Id*. at 661.  On December 28, 1976, while AWOL, Plaintiff was arrested in Maryland and "charged with several incidents of breaking and entering.  While in police custody," he "was diagnosed at the state hospital for the criminally insane as suffering from paranoid schizophrenia, but was found competent to stand trial.  Plaintiff was subsequently sentenced to 10 years in prison."  *Id*.  On March 20, 1979, Plaintiff was paroled to the Navy.  Once in military custody, Plaintiff

> was court-martialed for a period of unauthorized absence during which he pled guilty to grand larceny and breaking and entering in a civilian court.  During those proceedings, his counsel requested a medical and psychiatric board evaluation. The Board noted that plaintiff's psychiatric history began prior to his service and that he suffered from schizophrenia but concluded that he was competent to participate in his defense.
>
> Based on this evaluation, the Navy withdrew the charges and referred him to a medical board, which in 1979 diagnosed him with schizophrenia and recommended that his case be referred for a disability determination. In exchange for waiving his right to challenge the discharge, the Navy in 1979 gave him a "general discharge by reason of misconduct" for his conviction during his military service, instead of an "other than honorable" discharge.

*Quailes v. United States*, No. 18-225C, 2018 WL 5817899, at *1–2 (Fed. Cl. Nov. 7, 2018) (citing *Quailes*, 25 Cl. Ct.at 664); *see* AR 086; AR 266-267.[2]

---

[2]  The Administrative Record (AR) is assigned ECF Nos. 28-31.

In the agency action at issue in this case, Plaintiff requested and was denied reconsideration of his application to correct his "naval record pursuant to the provisions" of 10 U.S.C. § 1552, ECF No. 1-1, to reflect "an upgraded discharge to medical disability" due to post-traumatic stress disorder ("PTSD") and restoration of his "rank of E-3 with pay" for the periods of September 15, 1976 – October 6, 1976 and October 7, 1976 – March 20, 1979. AR 028. Plaintiff included a document titled "VA Compensation & Pension Exams Initial Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire" dated December 10, 2014. AR 032-046. In the denial letter to Plaintiff dated November 13, 2017, BCNR explained:

> The Board carefully considered your arguments that you should be placed on the Permanent Disability Retirement List for your Post-Traumatic Stress Disorder. Additionally, the Board considered your requests to be reinstated to the paygrade of E-3 and issued back pay for your periods of unauthorized absence. Unfortunately, the Board disagreed with your rationale for relief.
>
> First, the Board determined you suffered from schizophrenia, a preexisting disqualifying condition, which should have barred your enlistment in the Navy. The 12 June 1979 Sanity Board report and 22 June 1979 medical board report both determined that you suffered from schizophrenia prior to your enlistment in the Navy. The Board determined that the Navy's error in enlisting you does not qualify you for placement on the Permanent Disability Retirement List for that condition but mandated that the Navy to [sic] process you for separation for a disability condition that existed prior to entry[,] provided the disability processing was not superseded by misconduct related administrative separation processing.
>
> Second, the fact you went into an unauthorized absence status as a result of your schizophrenia and committed serious criminal offenses that resulted in your conviction and incarceration by the State of Maryland was determined not to be a sufficient basis to grant you military disability benefits, restore your E-3 paygrade, or provide you with back pay. According to your record, while you initially claimed to be insane, you eventually pled guilty and were convicted in civilian court to multiple counts of breaking and entering along with grand larceny. This conviction was serious enough to warrant a 10-year confinement sentence by the State of

> Maryland. Based on this evidence, in the Board's opinion, your conviction was serious enough to meet the requirement for administrative separation processing for civilian conviction.
>
> Third, since the Board concluded that you were properly convicted by a civilian court of a serious offense to qualify for administrative separation processing, it also concluded that your disability processing was properly superseded by the civilian conviction processing.
>
> Fourth, the Board determined that there was insufficient evidence to support a finding that you were suffering from PTSD symptoms warranting a finding of unfit for continued naval service. However, even if such evidence existed, the Board felt your condition also would have preexisted your entry into the Navy since it is likely based on traumatic events that occurred prior to your enlistment in the Navy. In your application, you argue that you suffered from PTSD as a result of your service in the Army but were allowed to enlist in the Navy. Again, the Board felt this would be another case of erroneous enlistment that does not mandate issuance of military disability benefits.
>
> Finally, despite the medical determination that you started to suffer from your schizophrenia condition in 1969, the Board felt it had insufficient evidence to set aside your 5 September 1976 non-judicial punishment and reinstate you to the pay grade of E-3. As noted in your entrance physical of February 1976, you were medically cleared to enlist after receiving treatment for your mental illness in 1975 and successfully completed basic training. This evidence along with the State of Maryland's finding that you were not criminally insane in 1977 led the Board to conclude that insufficient evidence exists to support a finding that you were not criminally responsible for your unauthorized absences that led to your non-judicial punishment. Further, the Board found no legal authority to pay you for periods of unauthorized absence. Accordingly, the Board determined no error or injustice exists in your case.

ECF No. 1-1 at 1-2 (reformatted for clarity).

## II.  LEGAL STANDARD

The APA authorizes a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Although

" '[s]ummary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record,' " *Bloch v. Powell*, 227 F. Supp. 2d 25, 30–31 (D.D.C. 2002) (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)), "the standard set forth in Rule 56(a) does not apply" because the court has a "limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013) (citations omitted).

Under the APA's arbitrary and capricious standard, "the scope of review . . . is narrow[,] and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). *See Envt'l. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (explaining that "[a]rbitrary and capricious" review is "highly deferential" and "presumes the agency's action to be valid"); *Coe*, 968 F. Supp. 2d at 239 ("Under the APA, the agency's role is to resolve factual issues to arrive at a decision that is supported by the administrative record, while 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.' ") (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)). An agency's explanation must, at a minimum, contain "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). A "brief statement" will suffice if it is clear from the agency's explanation "why it chose to do what it did." *Tourus Records, Inc. v. Drug*, 259 F.3d 731, 737 (D.C. Cir. 2001); *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177 (D.D.C. 2018).

A military "Secretary's decision to deny corrective relief is reviewable under the APA." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989). When undertaking review of

a military correction board decision pursuant to the APA, the Court will defer to the decision of the military correction board unless the board's decision is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Thalasinos v. Harvey*, 479 F. Supp. 2d 45, 49 (D.D.C. 2007) (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)).  The court considers "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals*, 903 F. Supp. at 105 (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)). "When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a remand to the agency for additional investigation or explanation." *Tourus Records, Inc.*, 259 F.3d at 738 (citation and internal quotation marks omitted).

A party seeking judicial review of a board's decision must overcome "the strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Frizelle*, 111 F.3d at 177.  Consequently, the plaintiff has the burden of showing "by clearly convincing evidence that the decision was the result of a material legal error or injustice." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014), *aff'd sub nom. Fulbright v. Murphy*, 650 Fed. App'x 3 (D.C. Cir. 2016) (citation omitted). The Court's role is to decide only "whether the decision-making process was deficient, not whether [the] decision was correct." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

Notwithstanding the highly deferential standard of review, a plaintiff may successfully rebut the presumption of correctness afforded the military board's decision if he shows that the

Board failed to consider or respond to an argument that is not "frivolous on [its] face and could affect the Board's ultimate disposition." *Frizelle*, 111 F.3d at 177.

### III. DISCUSSION

The "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a)(1). Absent an exception not applicable here, such corrections are made "by the Secretary acting through boards of civilians" like the BCNR. *Id*. Plaintiff advances three arguments, all of which are unavailing.

First, Plaintiff argues that the Board "failed to give justifiable answers as to why it did not" review the motion to reconsider under a "new standard" effective June 1, 2016. Pl.'s Mot., ECF No. 20 at 5. He posits that the new standard "allows Sailors and Marines suffering with post-traumatic stress disorder, traumatic brain injury or any other diagnosed mental health condition to be referred into the Disability Evaluation System" and requires that "diagnosed mental health conditions [take] precedence over misconduct when considering separation." *Id*. But Plaintiff does not dispute that he failed to raise this issue with the Board in the reconsideration motion currently under review, *see* Def.'s Mem., ECF No. 22-1 at 28, and "it is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." *Nuclear Energy Inst., Inc. v. Env't Prot. Agency*, 373 F.3d 1251, 1297 (D.C. Cir. 2004).

Second, Plaintiff faults the Board for failing "to address the issue of ineffective assistance of counsel in his petition for reconsideration dated January 23, 2018." Pl.'s Mot. at 5. As indicated above, the 2018 petition is beyond the scope of this litigation. Moreover, Defendant

7

posits, and the Court agrees, that "it would be inappropriate for the BCNR to consider a collateral attack" on Plaintiff's Maryland conviction.  Def.'s Mem. at 24, n.3.

Finally, Plaintiff argues that the Board "failed to honor or accept the full value" of the "doctors medical board report or the sanity board report . . . or state why it was only honored desertion."  Mot. at 6.  But the Board in fact considered the reports and rationally explained their weight, *see supra* at 3-4, and district courts reviewing agency action under the APA may not "duplicate agency fact-finding efforts" or generally "engage in independent fact-finding."  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is granted, and Plaintiff's motion is denied.  A separate order accompanies this memorandum opinion.


SIGNED:     EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

DATE:  August 14, 2023